166 Cal.App.4th 146 (2008)
In re A.C. a Person Coming Under the Juvenile Court Law.
MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
CARL C., Defendant and Appellant.
No. F054677.
Court of Appeals of California, Fifth District.
August 22, 2008.
*148 Catherine Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.
David A. Prentice, County Counsel, and Miranda P. Neal, Deputy County Counsel, for Plaintiff and Respondent.

OPINION
CORNELL, Acting P. J.
Carl C. appeals from an order terminating his parental rights to his daughter, A.C. (Welf. & Inst. Code, § 366.26.) He contends the dependency court presiding over his child's dependency erred by not appointing a guardian ad litem on his behalf because he was a person for whom a conservator had been appointed (Code Civ. Proc., § 372, subd. (a)) (hereafter section 372). In separate proceedings, a superior court previously found Carl was gravely disabled (Welf. & Inst. Code, § 5008, subd. (h)) and consequently ordered and repeatedly renewed a conservatorship for him under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.). According to Carl, the dependency court's failure to comply with section 372 violated his due process rights and therefore is reviewable here and prejudicial under a harmless-beyond-a-reasonable-doubt standard.
We disagree and will affirm. We hold the dependency court's noncompliance with section 372 standing alone does not violate the parent's due process rights and the error is subject to a harmless error standard (Cal. Const., art. VI, § 13).

*149 FACTUAL AND PROCEDURAL SUMMARY

Previous Dependency Proceedings
In January 2003, the Madera County Superior Court adjudged seven-year-old A.C. and her older brother dependent children and removed them from parental custody. Sexual abuse of A.C., the mother's apparent drug abuse, and her neglect of the children's mental health needs were the bases for the dependency court's exercise of jurisdiction.
At the time, Carl, the children's presumed father, was unable to care for them. He was institutionalized under an LPS conservatorship based on his long history of mental illness, coupled with noncompliance with treatment. He had a history of paranoia and delusions and was violent toward family members and those trying to assist him. His mental illness and substance abuse rendered him incapable of providing for his basic needs. Carl appeared in the dependency court proceedings through a court-appointed guardian ad litem.
According to a January 2003 social worker's report, providing reunification services to Carl would be an exercise in futility. Services would offer false hope to the children and prolong the needed time to deal with the loss of their father to mental illness.
The dependency court denied Carl reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (e)(1) because he was institutionalized and services would be detrimental to the children. The dependency court's 2003 dispositional order contained no order for visitation between Carl and the children. Eventually, A.C. reunified with her mother, and in July 2004 the dependency court dismissed A.C.'s dependency.[1]

Current Dependency Proceedings
The mother's drug relapse led to A.C.'s redetention and new dependency court proceedings in March 2006. Madera County Department of Social Services (Department) attempted to serve Carl notice of the new proceedings at the facility where he had been institutionalized during the prior dependency. The Department learned, however, that Carl no longer was at the facility. Hence, Carl did not appear at A.C.'s detention hearing. Even so, the dependency court appointed counsel to represent him.
*150 The Department soon located and noticed Carl, who made his first appearance at A.C.'s jurisdictional hearing in April 2006. Noting the dependency petition's allegations were solely against the mother, Carl's attorney submitted the issue of jurisdiction on a social worker's report. He then advised the dependency court that Carl wanted visits but was not receiving them. The dependency court announced it would not do so at that time. "... There's other issues that are relevant to his visitation, not his status as father, but I'm not going to order them before disposition. I'll let the department investigate that and I'll have to address the fact that [Carl] is back in the general location or general area. If they're not going to offer him services and not going to offer him visitation they need to explain why, but I'm not going to order it pending disposition."
The dependency court in turn exercised its jurisdiction over A.C. pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (j).
The Department's "Disposition Report" recommended the dependency court remove A.C. from parental custody and order reunification services for only the mother. (Welf. & Inst. Code, § 361.5.) The report included the family's social history, as gleaned from interviews with the mother. According to the report, Carl had been unavailable to interview.
The mother met Carl in approximately 1992 and knew him for 10 years. They married shortly after they met and, from the start of the marriage, there was "`a lot of abuse.'" They lived together for approximately two and a half years. Meanwhile, Carl was "`in and out of prison.'" According to the mother, Carl was "`like twelve different people.'" She was constantly in fear for her and the children's safety.
A records check with the Department of Justice confirmed Carl had a criminal history. It included multiple felony convictions starting in 1988, including two 1990 convictions and prison commitments, one for robbery (Pen. Code, § 211) and the other for burglary (id., § 459), a second burglary conviction and prison commitment in 1993, and another robbery conviction in 1998.
As the Department reported, Carl either had been incarcerated or institutionalized for the majority of A.C.'s life, so the bond between them was limited at best. On the issue of institutionalization, the disposition report described a 1999 superior court order appointing the Madera County Public Guardian/Conservator for Carl's person and estate. The conservatorship petition had alleged Carl was gravely disabled, as defined in Welfare and Institutions Code section 5008, subdivision (h) under the LPS Act, and *151 incapable of accepting voluntary treatment.[2] According to a 1999 mandated investigative report for the original conservatorship, "`[h]is wife and children have left him and he does not even know where they are.'" The court repeatedly had renewed the LPS conservatorship for Carl due to his psychotic behavior and noncompliance with mental health treatment.
The disposition report added Carl "currently remains on an LPS Conservatorship in a secured mental health facility." In addition to being institutionalized, Carl could not possess a driver's license, enter into a contract, vote, refuse treatment related to his grave disability, including psychotropic medications, possess firearms, or refuse routine medical treatment unrelated to his grave disability.
The Department recommended the dependency court deny Carl reunification services on two grounds. First, pursuant to Welfare and Institutions Code section 361.5, subdivision (e)(1), he was institutionalized and second, under Welfare and Institutions Code section 361.5, subdivision (b)(12), he had a violent felony conviction as defined by Penal Code section 667.5, subdivision (c).
Carl was not present on the date originally set for the dispositional hearing. He could not obtain transportation to court. The dependency court continued the case. Then, on May 2, 2006, Carl was present and through his attorney sought to contest the Department's no-services recommendation. The dependency court in turn set trial confirmation and contested dispositional hearings.
Carl attended the trial confirmation hearing during which county counsel stated her belief that Carl's only issue was visitation. Although the dependency court asked Carl's attorney about this claim, there is no record of any reply to the dependency court's query. The record does reveal that Carl received a copy of the dispositional report.
Carl was absent for the contested dispositional hearing conducted in late May. During that hearing, his attorney did not submit on the Department's report. Instead, counsel for Carl argued: "Mr. C[.]'s position is that as a non-offending parent he should be given services and allowed visits with A[.] un-forced...."
*152 In response to counsel's argument, the dependency court said, "I think that the report does set out the reasons why services are not being provided to Mr. [C.]" (Italics added.) As for Carl's request for unforced visits, the dependency court denied it based on Carl's "history."
The dependency court then adopted the Department's recommended findings and orders. The signed findings and orders included an order denying Carl reunification services under Welfare and Institutions Code section 361.5. It did not include either a finding or order regarding visitation between Carl and A.C.
Carl attended multiple status review hearings while A.C.'s case was in reunification. At a six-month status review, Carl's attorney questioned why Carl had not had visitation with A.C. County counsel told the dependency court there was a July visitation order. Carl corrected county counsel, saying: "That's my son, but with my daughter. I was actually in the car once when all three of them wentor both children. This is the first time I've seen my daughter in years."
The social worker responded, "We'll coordinate visits. We'll get those."
Other than the visitation issue, counsel for Carl submitted to the dependency court's continued jurisdiction and A.C.'s out-of-home placement.
In advance of the 12-month status review, the Department prepared a report recommending the dependency court terminate reunification services for the mother, who had not made any progress, and set a Welfare and Institutions Code section 366.26 hearing to select and implement a permanent plan for A.C. The Department's status review report did not contain any information on visitation between Carl and A.C.
During a hearing on the Department's latest report, which Carl attended, A.C.'s attorney informed the dependency court that the child, by then 10 years old, did not want visits with Carl. Neither Carl nor his counsel responded to this representation. According to his attorney, Carl took no position on the Department's report. Counsel added, "I don't think he'll be objecting if the department gave six more months of services."
The dependency court thereafter ordered additional services for the mother based on the child's strong relationship with her, despite the mother's noncompliance with court-ordered services. The dependency court specifically gave the mother additional time to enter a residential drug treatment program. But the mother did not comply.
*153 Carl next attended a July 2007 hearing at which the dependency court set the Department's recommendation to terminate the mother's services for a contested hearing. Carl's attorney submitted on the matter.
In August 2007, the dependency court terminated reunification services for the mother and set a Welfare and Institutions Code section 366.26 hearing for A.C. Because Carl did not attend that hearing, the dependency court's clerk served Carl notice of his writ remedy at a Madera address. The Department also served notice of the section 366.26 hearing on Carl at the same Madera address.
Although the dependency court did not conduct the Welfare and Institutions Code section 366.26 hearing until late January 2008, Carl was present on the originally scheduled section 366.26 hearing date and each continued hearing date thereafter.
Prior to the originally scheduled hearing date, an adoption social worker with the California Department of Social Services prepared a report for the dependency court recommending it find A.C. adoptable and terminate parental rights. Attorneys for both parents requested a contested hearing. In turn, the dependency court continued the hearing. It also clarified with Carl that he knew who his attorney was and urged him to talk to her.
At the eventual Welfare and Institutions Code section 366.26 hearing, Carl's attorney called the state adoption worker and cross-examined her on her adoption recommendation. In her report, the state adoption worker opined that A.C. was adoptable, despite a history of behavioral problems and her age, 12. A.C.'s behavioral problems appeared to be in the past. Also, A.C.'s foster parents, with whom she recently had been placed, received nonrelative extended family member status and were committed to adopting her. In addition, A.C. wished to live with her current foster parents under a plan of adoption.
After the case was submitted, the dependency court terminated parental rights.

DISCUSSION
Section 372, subdivision (a) provides in relevant part: "When a minor, an incompetent person, or a person for whom a conservator has been appointed is a party, that person shall appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the court in which the action *154 or proceeding is pending, or by a judge thereof, in each case. A guardian ad litem may be appointed in any case when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to appoint a guardian ad litem to represent the minor, incompetent person, or person for whom a conservator has been appointed, notwithstanding that the person may have a guardian or conservator of the estate and may have appeared by the guardian or conservator of the estate." (Italics added.)
In the current dependency proceedings, the parties and the dependency court were on notice that Carl was the subject of an LPS conservatorship and was represented by the county's public guardian by the time of the dispositional hearing, if not sooner. Even so, Carl neither appeared by his guardian nor did the dependency court appoint a guardian ad litem (GAL) to represent him.
On this basis, Carl contends the dependency court violated his due process rights. Carl further argues that due to this alleged due process violation (1) he may raise the issue for the first time in this appeal, and (2) the error was not harmless under a heightened prejudice standard. Alternatively, he claims his trial counsel was ineffective for not asserting his rights earlier.
The Department argues we should dismiss this appeal as frivolous and moot because in A.C.'s prior dependency the dependency court did appoint a GAL for Carl. In addition, according to the Department, there is no record that the dependency court either relieved the GAL or terminated the appointment on other grounds. The Department also argues Carl waived his appellate arguments by failing to raise the GAL issue in the dependency court or with this court by way of an earlier appeal or writ application. Alternatively, the Department contends any error was harmless.
(1) As discussed post, we disagree with each of Carl's arguments. A dependency court's failure to comply with section 372 is a statutory error or "mere irregularity" (In re Lisa M. (1986) 177 Cal.App.3d 915, 920, fn. 4 [225 Cal.Rptr. 7] (Lisa M.), citing Pacific Coast etc. Bank v. Clausen (1937) 8 Cal.2d 364, 366 [65 P.2d 352] (Pacific Coast)). By itself, it does not violate a person's due process rights.

I. Department's Motion to Dismiss

Whether an appeal is moot and therefore subject to dismissal depends on some event that occurs subsequent to the appealed-from order, not before. When, during the pendency of an appeal, an event occurs that renders it *155 impossible for an appellate court to grant any effectual relief, the dependency court will not proceed to a formal judgment but will dismiss the appeal. (Eye Dog Foundation v. State Board of Guide Dogs for the Blind (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717].) Thus, the dependency court's appointing a GAL for Carl in the previous dependency proceedings does not render this appeal arising out of the current dependency proceedings moot.
To the extent the Department accuses Carl of not affirmatively establishing that the dependency court ever relieved the GAL appointed in the previous dependency proceedings or terminated the appointment on other grounds, we also are not persuaded. The dependency court's 2004 order dismissing A.C.'s dependency effectively terminated the GAL appointment, which existed only for the purpose of those pending proceedings. (§ 372, subd. (a).)

II. Appealability

(2) When a dependency court has knowledge of a party's minor status or incompetence under section 372, the dependency court has an obligation to appoint a GAL sua sponte. (In re D.D. (2006) 144 Cal.App.4th 646, 653 [50 Cal.Rptr.3d 578] (D.D.); Lisa M., supra, 177 Cal.App.3d at p. 919.) By analogy, when a dependency court is informed that a conservator has been appointed for a party, the dependency court also has a sua sponte obligation either to appoint a GAL for that party or to order that the party shall appear through his or her conservator. Because the dependency court had a sua sponte duty under the statute, rather than discretionary authority, we conclude Carl did not waive his right to appeal by failing to raise the GAL issue in the dependency court. (Cf. In re Lorenzo C. (1997) 54 Cal.App.4th 1330, 1339 [63 Cal.Rptr.2d 562] [if the law does not require the juvenile court to act in a certain way, the parent bears the responsibility to care for his or her own interests by asking the court to exercise its discretion in a manner favorable to the parent].)
Whether Carl waived his claim of error by failing to raise it in a timely appeal is another matter. According to the waiver rule, "an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order...." (In re Meranda P. (1997) 56 Cal.App.4th 1143, 1151 [65 Cal.Rptr.2d 913] (Meranda P.).) In Meranda P., this court declined to carve out an exception to the waiver rule, "even though the issues raised involve[d] the important constitutional and statutory rights to counsel and to the effective assistance of counsel." (Ibid.) In declining to do so, we weighed the private and governmental interests, risks, and benefits at stake in that context and reasoned that *156 the resulting costs to the child and the state were greater than whatever benefits might accrue to the parent in the absence of the rule. We therefore concluded enforcing the waiver rule did not violate due process and was fundamentally fair. (Id. at p. 1152.)
Carl urges us not to find waiver in his case. First, he assumes that because he alleges that the dependency court violated his due process rights, he necessarily is entitled to our review. We disagree. That is not the test under Meranda P.
He also cites In re M.F. (2008) 161 Cal.App.4th 673, 682 [74 Cal.Rptr.3d 383] (M.F.) in which another appellate district ruled it would be inappropriate to apply the waiver rule to a parent's belated claim that a dependency court failed to appoint a GAL pursuant to section 372. The M.F. dependency court reasoned: "The failure to appoint a guardian ad litem in an appropriate case goes to the very ability of the parent to meaningfully participate in the proceedings. For the same reasons that [the minor parent] needed a guardian ad litem, she was `hardly in a position to recognize ... and independently protest' the failure to appoint her one. [Citation.]" (M.F., supra, 161 Cal.App.4th at p. 682.)
We question M.F.'s assertion that the failure to appoint a GAL in an appropriate case goes to the very ability of the parent to participate meaningfully in the proceedings. Nonetheless, we agree with M.F. to the limited extent it concluded a person entitled to a GAL under section 372 is hardly in a position to recognize the error and to protest a dependency court's failure to appoint one. We believe this is consistent with our holding and approach in Meranda P. To enforce the waiver rule in this particular situation would be fundamentally unfair. Thus, we conclude Carl has not waived his right to raise the section 372 issue on this appeal.

III. Section 372 Error

It is undisputed that the dependency court failed its obligation either to appoint a GAL to appear or direct that his guardian appear on Carl's behalf throughout these proceedings. The parties also assume, as will we, that Carl remained a conservatee for most, if not all, of the current dependency proceedings.
Thus, we turn to the question whether the dependency court's error was prejudicial. As mentioned previously, Carl argues the error violated his due process rights, and so our review for prejudice must be under a heightened standard of harmless beyond a reasonable doubt.
*157 Although we have considered Carl's argument on the merits as a matter of fundamental fairness (Meranda P., supra, 56 Cal.App.4th at p. 1152), we conclude the dependency court's failure to comply with section 372 did not violate Carl's due process rights. The failure to appoint a GAL or to compel a person's guardian to appear is not jurisdictional, but "merely irregular." (Pacific Coast, supra, 8 Cal.2d at p. 366.) If the person's interests were not substantially prejudiced as a result, there is no reversible error. (Ibid.) We do not set aside the judgment unless a different result would have been probable had the error not occurred. (Lisa M., supra, 177 Cal.App.3d at p. 920, fn. 4.)

A. Carl's Due Process Claim

Arguing otherwise, Carl relies on case law, which holds that a dependency court's failure to give a parent an informal hearing and an opportunity to be heard before appointing a GAL on incompetency grounds constitutes a due process violation. (See In re Daniel S. (2004) 115 Cal.App.4th 903 [9 Cal.Rptr.3d 646]; In re Sara D. (2001) 87 Cal.App.4th 661 [104 Cal.Rptr.2d 909] (Sara D.).)[3] In Carl's view, section 372 noncompliance is conversely a due process violation. We fail to see the logic in Carl's reasoning.
(3) Failure to appoint a GAL or order the guardian to appear in a parent's stead does not mean the parent has been denied notice and an opportunity to be heard regarding his interest in a child's companionship, care, and custody (In re Marilyn H. (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826]). By contrast, when a dependency court finds a parent incompetent and appoints a GAL without the benefit of an informal hearing and an opportunity to be heard, the effect of such an order is to transfer direction and control of the litigation from the parent to the GAL, who may waive the parent's rights. (In re James F. (2008) 42 Cal.4th 901, 910 [70 Cal.Rptr.3d 358, 174 P.3d 180] (James F.).) Clearly, the purpose of a GAL appointment in a dependency case is to protect the parent's rights. (Id. at p. 918.) The failure so to appoint, however, does not necessarily mean the parent's right to due process has been violated.
Carl also cites this court's decision in D.D., supra, 144 Cal.App.4th 646 for the proposition that failure to appoint a GAL under section 372 violates due process. That, however, was neither D.D.'s holding nor our intent.
The presumed father in D.D. was a minor, as was the child's mother. The dependency court appointed a GAL, as well as an attorney, for the mother, who attended the proceedings from the outset. The dependency court did not *158 do the same for the father at the detention phase as he had not personally appeared. (D.D., supra, 144 Cal.App.4th at pp. 648-650.) When the father appeared at a six-month review hearing, the dependency court appointed both a GAL and an attorney for him as he was still under age. (Id. at p. 652.)
This court held a GAL must be appointed for a presumed father who is a minor, at the outset, even though he personally does not appear. (D.D., supra, 144 Cal.App.4th at p. 648.) In so doing, we distinguished In re Emily R. (2000) 80 Cal.App.4th 1344 [96 Cal.Rptr.2d 285], which held a dependency court had no such duty for an underage, alleged father who had not appeared after receiving adequate notice. (D.D., at pp. 653-654.) Not only was the father in D.D. a presumed father, the record was devoid of adequate notice to him.
We did not hold that the dependency court's failure to appoint a GAL by itself was due process error. Rather, we observed "the very real problems that exist in this case because of no counsel being appointed for [the presumed father], and a complete lack of adequate notice, would have been resolved by the appointment of a guardian ad litem." (D.D., supra, 144 Cal.App.4th at p. 654.) We in turn concluded that since the presumed father was a minor and had neither a GAL nor an attorney to represent him, the proceedings were "fundamentally unfair." (Ibid.)
It was the combination of the failure to appoint a GAL, the failure to appoint an attorney, and the complete lack of adequate notice to the father that warranted our conclusion in D.D. that the proceedings were fundamentally unfair and that the father's due process rights were violated. Such was not the situation in the current dependency court proceedings.
(4) Except for the detention hearing when the Department did not know Carl's whereabouts, he received notice throughout the proceedings and attended a large majority of the hearings starting from the jurisdictional hearing through the ultimate hearing when the dependency court terminated parental rights. Also, the dependency court appointed counsel on Carl's behalf at the detention hearing and Carl received the benefit of court-appointed counsel throughout the proceedings. Under these circumstances, we conclude the dependency court's failure to comply with section 372 did not violate Carl's due process rights.

B. Harmless Error

Having held the dependency court's failure to comply with section 372 did not violate Carl's due process rights, we have reviewed the record under a miscarriage of justice standard (Cal. Const., art. VI, § 13) to determine *159 whether a different result would have been probable had the statutory error not occurred. We conclude Carl's interests were not substantially prejudiced. (Pacific Coast, supra, 8 Cal.2d at p. 366.) The error was harmless.
Carl urges that a GAL would have made a difference in the outcome by challenging (1) the dependency court's jurisdiction, (2) A.C.'s placement out of Carl's care, (3) the recommendation against reunification services for Carl, and (4) the lack of visitation between Carl and A.C. We disagree.
With regard to the dependency court's exercise of jurisdiction over A.C., the allegations of parental neglect in both the previous and current proceedings focused solely on the mother and her parental shortcomings. Thus, there was no reason for Carl, through his counsel or a GAL, to contest those allegations. Indeed Carl's trial counsel pointed this out, offering it as his explanation for submitting on the social worker's report detailing the mother's problems in the current proceedings.
Next, Carl overlooks his attorney seeking, albeit unsuccessfully, both services and visitation for Carl. Although he did submit on the issue of jurisdiction, he did not submit at the dispositional phase, as Carl so accuses him in this appeal.
More importantly, Carl was an LPS conservatee. While Carl's entire appeal emphasizes his status as a conservatee throughout these proceedings, he overlooks that he was a conservatee because he was gravely disabled due to mental illness. (Welf. & Inst. Code, § 5008, subd. (h)(1)(A).) He necessarily was unable to provide for his basic personal needs for food, clothing, or shelter. (Ibid.)
Given that Carl was incapable of caring for his own needs, there is no doubt that he could not care for his daughter. Thus, placement with Carl under Welfare and Institutions Code section 361.2 was out of the question. Furthermore, it is undisputed that Carl was institutionalized. That, coupled with Carl's mental health problems and own admission that he had not seen A.C. for years, even prior to the first dependency court proceedings, warranted a denial of services for him under Welfare and Institutions Code section 361.5, subdivision (e)(1) and a no-visitation order.
On the issue of visitation, Carl did request visits more than once, but acknowledged they should be unforced. The second time his attorney raised the issue, the Department agreed to arrange visits. Later, however, according to A.C.'s attorney, the child did not want to visit Carl. We do not think a GAL would have changed that outcome.

*160 DISPOSITION
The order terminating parental rights is affirmed.
Hill, J., and Kane, J., concurred.
NOTES
[1] The mother failed to reunify with her older child, whom the dependency court ordered into long-term foster care.
[2] Welfare and Institutions Code section 5008, subdivision (h) defines "gravely disabled" in three different contexts. First is a "condition in which a person, as a result of a mental disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter" (id., subd. (h)(1)(A)). Second is a condition in which a person has been found mentally incompetent under Penal Code section 1370 and other facts relating to a felony prosecution exist (Welf. & Inst. Code, § 5008, subd. (h)(1)(B)). Third is a "condition in which a person, as a result of impairment by chronic alcoholism, is unable to provide for his or her basic personal needs for food, clothing, or shelter" (id., subd. (h)(2)). Carl was gravely disabled pursuant to Welfare and Institutions Code section 5008, subdivision (h)(1)(A).
[3] The test for incompetence is whether the parent has the capacity to understand the nature and consequences of the proceeding and is able to assist counsel in preparing the case. (Sara D., supra, 87 Cal.App.4th at p. 667.)