Filed 4/1/21  In re P.P. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re P.P., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES,<br><br>        Petitioner and Respondent,<br>v.<br><br>P.P.,<br>        Objector and Appellant. | A160711<br><br>(Contra Costa County Super. Ct. No. J18-00924) |

P.P. ("father") appeals from the trial court's order terminating his parental rights to his son, also named P.P. ("child").  Father contends the court erred in failing to appoint a guardian ad litem for him because he had a serious medical condition.  Because the trial court's duty to appoint a guardian ad litem was not implicated here, we affirm.

### BACKGROUND

The Contra Costa Employment and Human Services Department, Children and Family Services ("Department") filed a dependency petition for the child, alleging that he was at substantial risk of suffering serious physical abuse because his mother ("mother") had punched his half-sibling in the eye.  The child resided with his

1

mother when he was detained.

Father resided in Oregon, where he was receiving medical care. He had a medical condition called "Cerebellar Ataxia with Tremors" that affected his motor functioning.

Although father did not appear at any of the dependency hearings, father's court-appointed counsel appeared at each hearing. His counsel successfully requested the court elevate his status from that of alleged father to presumed father of the child.

Father's mother ("grandmother") attended one of the hearings and unsuccessfully sought to have the child placed in her home. However, grandmother subsequently stopped responding to communication attempts by the Department and father's counsel.

At the six month review and the Welfare and Institutions Code section 366.26 hearing to select and implement a permanent plan, father's counsel reported that she had "lost track" of the father and was unable to locate him. The Department's unsuccessful efforts to locate father included searching multiple databases and other sources, sending him correspondence at grandmother's address and multiple addresses for father in Oregon and California, and attempting to call him at telephone numbers identified in its search. The court ordered publication of notices concerning the Welfare and Institutions Code section 366.26 hearing in newspapers in California and Oregon. Efforts to personally serve father with notice at seven different addresses in Oregon and California were likewise unsuccessful.

At the Welfare and Institutions Code section 366.26 hearing, father's counsel objected to termination of his parental rights. Ultimately, the Court terminated parental rights for both parents and

found that the child was adoptable.

## DISCUSSION

Father contends that the trial court erred in failing to sua sponte appoint a guardian ad litem for him.  We disagree.

### A.

"In a dependency case, a parent who is mentally incompetent must appear by a guardian ad litem appointed by the court." (*In re James F.* (2008) 42 Cal.4th 901, 910 (*James F.*); see Code Civ. Proc., § 372, subd. (a)(1) ["When a minor, a person who lacks legal capacity to make decisions, or a person for whom a conservator has been appointed is a party, that person shall appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the court in which the action or proceeding is pending, or by a judge thereof, in each case."].)  As father asserts, where the juvenile court already has knowledge that a party is incompetent or is a person for whom a conservator has been appointed, the court has a duty to appoint a guardian ad litem sua sponte.  (See *In re A.C.* (2008) 166 Cal.App.4th 146, 155 (*A.C.*); Code Civ. Proc., § 373, subd. (c) [court may appoint guardian ad litem on own motion].)  When that is not the case, however, the dependency court has discretion to decide whether to inquire into a parent's competency.  (See *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368 (*Ronell A.*) [applying abuse of discretion standard in reviewing father's claim that trial court erred in failing to inquire into his competency given his mental illness and substance abuse]; accord *In re R. S.* (1985) 167 Cal.App.3d 946, 979 (*R.S.*).)  The appointment of a guardian ad litem "dramatically change[s] the parent's role in the proceeding by transferring the direction and control

3

of the litigation from the parent to the guardian ad litem." (*In re Sara D.* (2001) 87 Cal.App.4th 661, 668 (*Sara D.*); see also *In re Jessica G.* (2001) 93 Cal.App.4th 1180, 1186-1187 ["The effect of the appointment is to remove control over the litigation from the parent, whose vital rights are at issue, and transfer it to the guardian.  Consequently, the appointment must be approached with care and appreciation of its very significant legal effect."].)

Incompetency turns on "whether the parent has the capacity to understand the nature or consequences of the proceeding and to assist counsel in preparing the case." (*James F.*, *supra*, 42 Cal.4th at p. 910.) The "court should appoint a guardian ad litem for a parent if the requirements of *either* Probate Code section 1801 or Penal Code section 1367 are satisfied." (*Id.* at p. 916.)  Under Penal Code section 1367, subdivision (a), a "defendant is mentally incompetent . . . if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the . . . proceedings or to assist counsel in the conduct of a defense in a rational manner."  Pursuant to the provisions for conservatorship in Probate Code section 1801, the test is whether the individual "is unable to provide properly for his or her personal needs for physical health, food, clothing, or shelter, except as provided for the person as described in subdivision (b) or (c) of Section 1828.5" (Prob. Code, § 1801, subd. (a)) or "is substantially unable to manage his or her own financial resources or resist fraud or undue influence, except as provided for that person as described in subdivision (b) or (c) of Section 1828.5." (Prob. Code, § 1801, subd.

4

(b)).[1]  To appoint a guardian ad litem, the juvenile "court must find by a preponderance of the evidence that the parent" is incompetent under either Penal Code section 1367 or Probate Code section 1801.  (*Sara D.*, *supra*, 87 Cal.App.4th at p. 667.)

**B.**

As a result of having "Cerebellar Ataxia with Tremors," father experienced an "inability to coordinate, extremities in eye movement, motor speech disorder[,] and a disturbance in muscular coordination." Although father was unable to complete paperwork, grandmother explained the paperwork to him and planned to apply for medical power of attorney for him.

Father moved from California to Oregon prior to the dependency proceedings "to be with his father and sister to assist him in care." Although he did not attend the proceedings, his counsel appeared on his behalf.  When the trial court inquired as to whether father could participate in the hearings by telephone, father's counsel reported that "[h]is disability is such that it's hard for him to participate by telephone."  However, father's counsel was apparently able to communicate with him, as she requested that the court elevate his status to that of presumed father and advised the court that he was on

---

[1] Probate Code section 1828.5, subdivision (c), provides an exception for a developmentally disabled adult who "lacks the capacity to perform some, but not all, of the tasks necessary to provide properly for his or her own personal needs for physical health, food, clothing, or shelter, or to manage his or her own financial resources," providing for limited conservatorship instead.  (Prob. Code, § 1828.5, subds. (b), (c).) Section 1828.5, subdivision (b), provides that no conservatorship shall be appointed for a developmentally disabled adult who "possesses the capacity to care for himself or herself and to manage his or her property as a reasonably prudent person."

the child's birth certificate, he lived with mother for two years after the child was born, and "he holds out [the child] as his child."

At the disposition hearing, grandmother reported to the court that father was hospitalized in Oregon. While father was hospitalized, however, grandmother advised the court that father was able to do video calls and that when she was with the child, she had a video call with father and "they were able to talk up to [the child's] ability to communicate over the phone." As a result, the court ordered that visitation with father "may occur via video and telephone calls, and visits will be arranged when the father is in the local vicinity."

According to mother, father "had made arrangements to move back to California from Oregon," but because "his symptoms from his disease increased . . . he had to be placed in a convalescent home" in Oregon.

## C.

We conclude that the court did not abuse its discretion in declining to appoint a guardian ad litem for father or inquire into his competency. (See *Ronell A.*, *supra*, 44 Cal.App.4th at p. 1368.)[2]

---

[2] Father asserts that rather than apply an abuse of discretion standard, the court should review the record to determine whether a miscarriage of justice resulted from the failure to appoint a guardian ad litem, citing *A.C.*, *supra*, 166 Cal.App.4th at pp. 157-159, and *In re M.F.* (2008) 161 Cal.App.4th 673, 682 (*M.F.*). However, in *A.C.* and *M.F.* there was no dispute that the parent was entitled to a guardian ad litem, and the miscarriage of justice standard was used to evaluate the impact of that error. (*A.C.*, *supra*, 166 Cal.App.4th at pp. 156, 158-159; *M.F.*, *supra*, 161 Cal.App.4th at pp. 676, 682.). Because, as we explain, the record here does not support the conclusion that the trial court erred, there is no occasion to consider whether a miscarriage of justice occurred as a result.

Although father had a condition that affected his motor functioning, there was no evidence that he had a disability that rendered him incapable of understanding the proceedings or assisting his attorney, as required under Penal Code section 1367. (See, e.g., *Sara D., supra*, 87 Cal.App.4th at p. 674 [evidence that parent had psychological problems (major depression, posttraumatic stress disorder with chemical dependency in remission, and borderline personality disorder), "fragmented thoughts which made it difficult for her to stay focused," and "chaotic relationships with both children and adults" did not indicate she was unable to understand the nature of the proceedings or was unable to assist counsel]; *R. S., supra*, 167 Cal.App.3d at pp. 978-980 [parent's mild mental retardation and dependent personality disorder did not warrant appointment of guardian ad litem where she understood the nature of the proceedings and was able to meaningfully participate in them].) To the contrary, grandmother explained the forms to him, he was able to communicate with the child via video calls, and he made arrangements to move from one state to another. While his trial counsel indicated that telephone communication was "hard for him," she never raised any concerns about his competency. Further, there is nothing to indicate that the reason for father's difficulty with the telephone was a disability affecting his comprehension of the proceedings, as opposed to his motor challenges. Indeed, father acknowledges that he "was able to videocall." In addition, contrary to father's assertion, although grandmother was seeking to obtain medical power of attorney for father, there was no evidence that he lacked the capacity to make his own decisions.

7

Neither does the record indicate that father was incompetent under Probate Code section 1801. The social worker described father as being unable "to care for self or [the child]" and the record indicates that at one point father was residing in a "convalescent home." That a disabled individual may require the assistance of nurses or other health aides does not mean that he or she is incompetent or "unable to provide properly for his or her personal needs for physical health, food, clothing, or shelter." (Prob. Code, § 1801, subd. (a).) (See, e.g., *In re Christopher I.* (2003) 106 Cal.App.4th 533, 568-569 [concluding that notwithstanding evidence that mother "did not cook, could not navigate the public transportation system, and had been referred to the county for social services," "[t]here was no evidence . . . that [she] was unable to provide properly for her personal needs for health, food, clothing or shelter, or that she was unable to manage her own financial resources" within the meaning of Probate Code section 1801]; cf. *Bouvia v. Superior Court* (1986) 179 Cal.App.3d 1127, 1137-1142 [quadriplegic patient hospitalized with severe cerebral palsy was mentally competent and had right to direct her own health care].) Finally, although father asserts that he was substantially unable to manage his financial resources, he provides no record citation to information that would have alerted the trial court in this regard, and we have found none.

### D.

Finally, father asserts that the failure of his trial counsel to request a guardian ad litem constituted ineffective assistance. However, ineffective assistance of counsel claims should ordinarily be brought via a habeas corpus petition, rather than direct appeal, because " '[a]ction taken or not taken by counsel at a trial is typically

8

motivated by considerations not reflected in the record.' " (*In re Darlice C.* (2003) 105 Cal.App.4th 459, 463.)  Here, trial counsel may have declined to request a guardian ad litem because she was aware that doing so was unnecessary; the appellate record is silent as to the information available to trial counsel concerning father's ability to comprehend the proceedings and assist in the representation.  Because the record fails to establish that there could be no satisfactory explanation for counsel's performance, father's ineffective assistance claim may not be heard in this appeal.  (See, e.g., *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

## DISPOSITION

The judgment is affirmed.

_____
BURNS, J.

We concur:

_____
NEEDHAM, ACTING P.J.

_____
RODRIGUEZ, J.*

A160711

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10