[No. C056735. Third Dist. Mar. 28, 2008.]

In re M.F., a Person Coming Under the Juvenile Court Law.
SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, Plaintiff and
Respondent, v.
C.F., Defendant and Appellant.

COUNSEL

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

David E. Wooten, County Counsel, and Kimberly Johnson, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**CANTIL-SAKAUYE, J.**—C.F., the mother of the infant and a minor herself, appeals from the juvenile court's order terminating parental rights. (Welf. & Inst. Code, §§ 366.26, 395.)[1] She contends the juvenile court erred by failing to appoint her a guardian ad litem until after her reunification services were terminated and the hearing to terminate her parental rights was pending. As C.F. was a minor throughout these proceedings, we agree she was entitled to the protections of a guardian ad litem. We cannot find the error harmless in this case and, accordingly, shall reverse the order terminating parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2005, when C.F. was 14 years old, the San Joaquin County Human Services Agency (the Agency) filed a dependency petition concerning the 10-month-old infant, alleging that C.F. had been subjected to ongoing sexual abuse by her stepfather over a four-year period, resulting in the birth

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

of the infant. Although C.F.'s mother knew about the sexual abuse, she told C.F. to lie about it to law enforcement personnel when the allegations were first investigated.

The juvenile court sustained the allegations in the petition pursuant to C.F.'s no contest plea and ordered the infant placed in foster care with C.F., who was the subject of a separate dependency proceeding.

By the time of the infant's dispositional hearing, C.F. had been referred for personal and sexual abuse counseling and was enrolled in a parenting class at school. It was reported that she was doing "very well" with the infant, whom she wanted to remain in her care. The juvenile court ordered the infant placed with C.F. with services as recommended by the social worker.

The following month, C.F.'s placement was changed. According to the report for the six-month review hearing, C.F. was "participating in individual therapy and making some progress," but she was struggling with depression and was unsure at times whether she wanted to keep the infant. Meanwhile, C.F.'s stepfather had been sentenced to prison for sexual abuse.

Two days before the six-month review hearing in May 2006, C.F. ran away with the infant, resulting in the filing of a supplemental petition. In July 2006, the infant was located at the residence of C.F.'s mother and was detained. Several months later, C.F. was located, after which she appeared in court and pled no contest to the allegations in the supplemental petition.

As to C.F.'s subsequent dispositional report, C.F.'s mother had failed to participate in services to reunify with C.F., and C.F. was in permanent placement in a foster home, where she was having difficulty with house rules. C.F. continued to want to comply with her case plan and reunify with the infant, and the social worker recommended six more months of services. However, the day after the social worker signed her report, C.F. was removed from her foster home for continued curfew violations and stealing from the foster parent, and she ran away from the children's shelter the following day. The social worker changed the recommendation to termination of C.F.'s services.

C.F.'s whereabouts remained unknown at the dispositional hearing on the supplemental petition in December 2006, although her attorney had spoken to her and reported that she "seemed fully committed to reunifying with [the infant]." The request by C.F.'s attorney for a continuance was denied, and she presented no evidence or argument. The juvenile court found there was not a substantial probability the infant would be returned to C.F. within six months and terminated reunification services. A hearing to select and implement a

permanent plan for the infant pursuant to section 366.26 was set, and a "writ packet" was sent to appellant at her mother's address.

According to the report for the section 366.26 hearing, C.F. had recently returned to the children's shelter and wanted more time to reunify with the infant. Meanwhile, the infant had been placed in a prospective adoptive home, and the social worker recommended termination of parental rights.

C.F. was present in court on the date set for the section 366.26 hearing, and the matter was continued. She was present at the next hearing as well, and the juvenile court appointed a guardian ad litem for her "based on some recent case law."

C.F. was not present at the next hearing and was reportedly absent, "AWOL" as of the following court date. However, according to her attorney, C.F. had left a message the previous week wanting to know what would happen with the infant. C.F.'s attorney requested a continuance. The guardian ad litem had "no comment." The juvenile court terminated parental rights and ordered the infant placed for adoption.

## DISCUSSION

Keeping in mind that C.F. was only 14 years old when the dependency petition in this case was filed, C.F. contends the juvenile court erred by failing to appoint a guardian ad litem for her earlier in the proceedings. We agree and conclude the error was not harmless.

■ Code of Civil Procedure section 372, subdivision (a) (section 372) provides in pertinent part: "When a minor, an incompetent person, or a person for whom a conservator has been appointed is a party, that person shall appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the court in which the action or proceeding is pending, or by a judge thereof, in each case." Section 372 " 'represents a recognition by the Legislature that whenever a minor is involved in litigation, his rights cannot be protected unless a guardian ad litem or a similar representative acts for him.' " (*In re Josiah Z.* (2005) 36 Cal.4th 664, 678 [31 Cal.Rptr.3d 472, 115 P.3d 1133], quoting *De Los Santos v. Superior Court* (1980) 27 Cal.3d 677, 683 [166 Cal.Rptr. 172, 613 P.2d 233].)

■ Although provisions of the Code of Civil Procedure "do not automatically extend to the dependency context," "in the absence of a dispositive provision in the Welfare and Institutions Code, we may look to these requirements for guidance. [Citation.]" (*In re Josiah Z., supra,* 36 Cal.4th at pp. 678–679.) Our Supreme Court has recognized that, "[i]n a dependency

case, a parent who is mentally incompetent must appear by a guardian ad litem appointed by the court" (*In re James F.* (2008) 42 Cal.4th 901, 910 [70 Cal.Rptr.3d 358, 174 P.3d 180]), and we cannot conceive of any basis for applying a different rule to a minor parent in such proceedings. Other appellate courts have agreed. (See, e.g., *In re D.D.* (2006) 144 Cal.App.4th 646, 653 [50 Cal.Rptr.3d 578]; *In re Sara D.* (2001) 87 Cal.App.4th 661, 667 [104 Cal.Rptr.2d 909].) ■ Similarly, the juvenile court's sua sponte duty in dependency proceedings to appoint a guardian ad litem for a party it deems incompetent (*In re Lisa M.* (1986) 177 Cal.App.3d 915, 919 [225 Cal.Rptr. 7]; see Code Civ. Proc., § 373, subd. (b)) must extend as well to a parent who is a minor. Thus, the failure to appoint a guardian ad litem for C.F. at the commencement of dependency proceedings was error.

The Agency argues that C.F. was represented by counsel throughout the proceedings and was not entitled to the appointment of a separate guardian ad litem. The Agency's reliance on cases involving the appointment of a guardian ad litem for a minor who is the *subject* of a dependency proceeding is misplaced. (See, e.g., *In re Christopher I.* (2003) 106 Cal.App.4th 533 [131 Cal.Rptr.2d 122]; *In re Charles T.* (2002) 102 Cal.App.4th 869 [125 Cal.Rptr.2d 868].)

■ The Welfare and Institutions Code and the California Rules of Court contain provisions for the appointment of a guardian ad litem for a child who is the subject of a dependency proceeding. (§ 326.5; Cal. Rules of Court, rule 5.662.[2]) The guardian ad litem in such case is charged with "obtain[ing] firsthand a clear understanding of the situation and needs of the child" and "mak[ing] recommendations to the court concerning the best interest of the child . . . ." (Rule 5.662(d).) Similarly, an attorney representing the subject child in dependency proceedings must "advocate for the protection, safety, and physical and emotional well-being of the child" (§ 317, subd. (c)), even when this conflicts with the child's wishes. (See *In re Zamer G.* (2007) 153 Cal.App.4th 1253, 1265 [63 Cal.Rptr.3d 769], and cases cited therein.) Thus, the role of the attorney for such children does not differ significantly from that of the guardian ad litem. Consequently, the Rules of Court provide that the attorney for the child also serves as the child's guardian ad litem. (Rule 5.662(c).)

■ But an attorney for a parent in dependency proceedings functions in a traditional advocate role, because dependency proceedings "are accusatory in nature *as to the parent, although not as to the child.* [Citation.]" (*In re Charles T., supra,* 102 Cal.App.4th at p. 875.) As a result, counsel for a parent must receive input and direction from his or her client regarding many procedural and substantive issues, such as whether to seek reunification and

---

[2] Further rule references are to the California Rules of Court.

whether to proceed by contested hearing. An attorney for a parent in dependency proceedings must have meaningful input from his or her client in order to advocate on the parent's behalf. Code of Civil Procedure section 372 recognizes that minors (as well as conservatees and individuals determined to be incompetent) are considered legally incapable of providing adequate direction to counsel. A guardian ad litem is necessary in such cases to stand in the role of the client.

C.F. argues that the error in failing to appoint her a guardian ad litem was jurisdictional, mandating reversal without regard to whether she was prejudiced by the error. She is incorrect.

■ While Code of Civil Procedure section 372 states that minors "shall" appear by a guardian ad litem, "[u]se of the word 'shall,' . . . does not necessarily indicate a mandatory requirement." (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1419 [286 Cal.Rptr. 239].) "Where '[t]he statute does not provide a penalty or consequence for noncompliance, [and there is no] suggestion the Legislature intended to strip the court of jurisdiction . . . ,' the language should be considered directory rather than mandatory. [Citations.]" (*Ibid.*) In such case, "[t]he lack of strict compliance with [a statute], in the absence of prejudice, does not render the subsequent proceedings void. [Citation.]" (*Ibid.*; see *In re C. T.* (2002) 100 Cal.App.4th 101, 111 [121 Cal.Rptr.2d 897].)

C.F. does not point to anything in the language of the statute or its legislative history to suggest an intent on the part of the Legislature that a violation of Code of Civil Procedure section 372 be treated as a jurisdictional defect. Numerous cases have found to the contrary. (See *In re James F., supra,* 42 Cal.4th at pp. 911–913, and cases cited therein; *Pacific Coast etc. Bank v. Clausen* (1937) 8 Cal.2d 364, 366 [65 P.2d 352].) Accordingly, we review the record to determine whether C.F. was prejudiced by the failure to appoint a guardian ad litem. We conclude she was.

■ We begin by noting the duties of a guardian ad litem in dependency proceedings. "[A] guardian ad litem's role is more than an attorney's but less than a party's. The guardian may make tactical and even fundamental decisions affecting the litigation but always with the interest of the guardian's charge in mind. Specifically, the guardian may not compromise fundamental rights, including the right to trial, without some countervailing and significant benefit." (*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1454 [23 Cal.Rptr.2d 918]; see *In re Josiah Z., supra,* 36 Cal.4th at p. 678.) "The appointment of a guardian ad litem is not a bare technicality and the office of a guardian involves more than perfunctory or shadowy duties. It is the duty of a guardian ad litem to protect or defend a suit, as the case may be. The guardian ad litem

can neither admit anything against nor waive anything in favor of his ward, but the adversary of the infant must be required to prove his whole case. [Citations.]" (*In re Christina B.*, *supra*, at p. 1452.)

█  In the present matter, C.F.'s rights were compromised at key hearings as a result of the failure to appoint a guardian ad litem. The basis for jurisdiction in the present matter was C.F.'s sexual and physical victimization by her stepfather and her mother's failure to protect her. Neither the petition nor the social worker's report alleged any direct abuse or neglect of the infant or any wrongful conduct by C.F. A guardian ad litem would have been required to contest jurisdiction, whereas C.F. waived her right to a contested hearing. In addition, the infant was not residing with C.F. when she was detained, and a guardian ad litem might have urged the court to place the infant with C.F. under the provisions of section 361.2 (placement with "noncustodial" parent). Visits did not occur for more than three weeks after the infant was placed in protective custody. Although C.F., herself in protective custody, did not attend the first two hearings in the matter, a guardian ad litem would have been present and, presumably, would have notified counsel and the court of this omission.

Likewise, C.F.'s absence at the six-month review hearing and the dispositional hearing on the supplemental petition left her attorney with little guidance from her client. As the infant was returned to C.F. at the original dispositional hearing, C.F. could have argued that the time limits for reunification set forth in section 361.5, subdivision (a), were not applicable as a basis to deny further services when the infant was subsequently removed. (Compare *In re Joel T.* (1999) 70 Cal.App.4th 263, 268 [82 Cal.Rptr.2d 538] with *In re N.M.* (2003) 108 Cal.App.4th 845, 855 [134 Cal.Rptr.2d 187].) A further argument could have been made that, as the basis for the supplemental petition was unrelated to the original grounds for jurisdiction, additional services should be offered to address the new problems. (See *In re Barbara P.* (1994) 30 Cal.App.4th 926, 934 [36 Cal.Rptr.2d 27]; *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1464 [234 Cal.Rptr. 84].) Instead, C.F.'s attorney appeared without a client at these hearings and offered no evidence or argument. As C.F.'s attorney did not contest any of the findings or orders in this matter, the failure to appoint a guardian ad litem for C.F. cannot be deemed harmless under any standard. (See *In re James F.*, *supra*, 42 Cal.4th at 911, fn. 1 [court declines to address which harmless error standard applies to erroneous appointment of a guardian ad litem].)

█  We also reject the Agency's argument that C.F.'s claim has been forfeited by her failure to file a writ petition following the termination of her reunification services. The waiver rule balances the interest of parents in the care and custody of their children with that of children in expeditiously

resolving their custody status. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1151–1156 [65 Cal.Rptr.2d 913].) In most instances, a parent's due process interests are protected despite the application of the waiver rule because the dependency system has numerous safeguards built into it to prevent the erroneous termination of parental rights. (*Id.* at pp. 1154–1155.)

But, the waiver rule will not be applied if " 'due process forbids it.' " (*In re S. D.* (2002) 99 Cal.App.4th 1068, 1079 [121 Cal.Rptr.2d 518], quoting *In re Janee J.* (1999) 74 Cal.App.4th 198, 208 [87 Cal.Rptr.2d 634].) Relaxation of the waiver rule is appropriate when an error "fundamentally undermine[s] the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole." (*In re Janee J., supra,* at p. 208.) Thus, appellate courts have refused to apply the waiver rule when a guardian ad litem has been appointed erroneously, because in such cases the attorney looks to the guardian ad litem, not the parent, to exercise the right to appellate review. (*In re Joann E.* (2002) 104 Cal.App.4th 347, 353–354 [128 Cal.Rptr.2d 189]; *In re Jessica G.* (2001) 93 Cal.App.4th 1180, 1190 [113 Cal.Rptr.2d 714].)

We conclude it would be inappropriate to apply the waiver rule here. The failure to appoint a guardian ad litem in an appropriate case goes to the very ability of the parent to meaningfully participate in the proceedings. For the same reasons that C.F. needed a guardian ad litem, she was "hardly in a position to recognize . . . and independently protest" the failure to appoint her one. (*In re S. D., supra,* 99 Cal.App.4th at p. 1080.)

Our examination of the entire record in the present matter leads us to conclude that the failure to appoint a guardian ad litem for C.F. resulted in a miscarriage of justice. (See Cal. Const., art. VI, § 13.) The error in this matter necessitates that the proceedings return to "square one," as C.F. was entitled to the appointment of a guardian ad litem at the commencement of the proceedings. On remand, the juvenile court must determine whether there is a current basis for jurisdiction. (*In re S. D., supra,* 99 Cal.App.4th at pp. 1083–1084.) We share in the sentiments expressed by other appellate courts when faced with the prospect that a decision in a dependency appeal will greatly prolong stability and permanence for the children involved. (See, e.g., *In re Joann E., supra,* 104 Cal.App.4th at p. 361.) Nonetheless, under the circumstances presented here, we are compelled to ensure that C.F. is afforded the protections to which she is entitled before her parental rights with the infant are forever lost.

## DISPOSITION

The order terminating parental rights and all prior orders are vacated. The matter is remanded to the juvenile court with directions to conduct a new jurisdictional hearing consistent with the opinion herein.

Sims, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied April 24, 2008, and respondent's petition for review by the Supreme Court was denied June 25, 2008, S163351. George, C. J., and Corrigan, J., did not participate therein.