Filed 2/14/14  In re E.P.  CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re E.P., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>K. P.,<br><br>    Objector and Appellant.<br>_____/ | A137735<br><br>(Alameda County Super. Ct. No. OJ1101661101) |

K.P. (mother) appeals from a juvenile court order terminating her parental rights as to E.P. (daughter) following a Welfare and Institutions Code section 366.26 hearing (.26 hearing).[1]  Mother contends the court's delayed appointment of a guardian ad litem for her "is reversible error."  We disagree and affirm.

_____

[1] Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.  Father is not a party to the appeal and is mentioned only where relevant to the issues raised in mother's appeal.  (*In re V.F.* (2007) 157 Cal.App.4th 962, 966, fn. 2, superseded on other grounds as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57–58.)

## FACTUAL AND PROCEDURAL BACKGROUND

*Detention, Jurisdiction, and Disposition*

Mother was incarcerated, awaiting trial on burglary charges, when daughter was born in March 2011. A few days later, the Alameda County Social Services Agency (the Agency) filed a section 300 petition alleging, among other things, that mother's mental health issues "periodically interfere[d] with her ability to care for and provide for" daughter and that father's whereabouts were unknown. (§ 300, subds. (b), (g).) Specifically, the petition alleged: (1) mother "is diagnosed with schizophrenia and refuses to take medication for this illness," "does not believe that she has a mental health issue," and "has been hospitalized" at a psychiatric facility "six times"; and (2) "mother exhibits volatile behaviors and . . . is experiencing delusions," is "hearing voices," is "disheveled in appearance, will not shower for months, and believes people are following her." The Agency amended the petition to add an allegation that mother was incarcerated and unable to care for daughter. (§ 300, subd. (g).)

Following a detention hearing, the court detained daughter and placed her with daughter's maternal aunt (aunt). In its jurisdiction/disposition report, the Agency noted mother has schizophrenia and had "been off her medications since late 2009. [She] has a history of poor impulse control, violent altercations with family members, and poor judgment. [M]other has been homeless for at least four years" and "does not exhibit the ability to provide care" for daughter.

Mother appeared at the contested jurisdictional and dispositional hearing in May 2011 and denied having a mental issue that interfered with her ability to care for daughter. At the conclusion of the hearing, the court noted mother was deluded "as to the nature and extent of her mental health issues." The court explained that mother seemed to be "alert and coherent" and "very intelligent" and "likeable" but that her animated gestures were "concerning." According to the court, until mother took "care of [her] serious mental health issues," daughter was "at risk." Following the hearing, the court declared daughter a dependent of the court, ordered reunification services, and directed the Agency to arrange supervised visitation.

2

*The Appointment of a Guardian Ad Litem*

In August 2011, clinical psychologist Alejandro J. Ferreyra, Psy.D., assessed mother. He noted her "memory and concentration appeared intact" but that she "may be experiencing a brief psychotic episode characterized by fluctuating periods of disorganized and bizarre thinking." Dr. Ferreyra opined mother had "serious and complex" mental health issues and a "propensity for erratic and periodic psychotic behavior." In addition, Dr. Ferreyra noted mother "had been in jail" and had "been prevented from practicing behaviors which might be labeled 'criminal activity.' But, as she lacks a reasonably reliable place to reside and a manner of employment for self support, she will likely return to her old lifestyle" when released from jail. Dr. Ferreyra observed mother "did not express sadness, regret, or longing for [daughter]. . . . Her daughter did not appear to be a consideration for her."

In its November 2011 six-month review report, the Agency recommended terminating reunification services and placing daughter in a permanent living arrangement with her aunt. The Agency reported mother had attended "sessions, classes, and participat[ed] in the random drug testing required of her." According to the Agency, however, mother continued "to deny her mental health issues, refuse[d] to participate in psychiatric care and denie[d] she needs medication."

Mother did not appear at the December 2011 six-month review hearing. Her attorney explained he did "not know why she's not here, but she's made clear that she is opposed to [the Agency's] recommendation." The social worker told the court she had spoken with mother, who said "she would be here, but she's in a really difficult place right now. She believes we kidnapped [daughter] so she went to the police station. . . . [S]he's just really in a bad place right now." When asked by the court whether mother was receiving any "assistance with therapy or anything," the social worker explained, "I tried everything, and she's too paranoid. She doesn't believe that I'm trying to help her . . . ."

The court told mother's attorney, "[W]e may now finally be in a situation [ ] to provide guardian ad litems . . . on a voluntary basis. . . . So at an appropriate time —

3

today would be an appropriate time. If you want, and I'm not recommending that you do, but in your professional, legal opinion your client needs a hearing on a GAL, let us know sooner rather than later." Mother's counsel requested an appointment of a guardian ad litem and the court ordered counsel to put the matter on the calendar for a *Sara D.*[2] hearing. The court continued mother's monitored visitation but gave the Agency discretion to suspend it and set a January 2012 date for a contested six-month review hearing.[3]

Mother appeared on the date set for the six-month review hearing. She was "distraught" and had "been yelling in the hallway" outside the courtroom. The court explained it did not conduct a *Sara D.* hearing at the December 2011 six-month review hearing because mother was not present. The court then asked mother's counsel to "make your record as to a request for appointment of a guardian ad litem." Counsel stated mother was unable to participate in the presentation of the case and described how mother did not recognize him, was "self-talking," and could not respond to his questions in a coherent manner. The court told mother her attorney "doesn't believe that given your current mental situation that you are able to adequately assist him in the presentation of your case. He wants to do a good job for you, and he doesn't believe that he can do it without having an intermediary, somebody that would step in and help you work with your attorney in a presentation of your case." The court then explained the purpose of a *Sara D.* hearing and held one.

At the conclusion of the *Sara D.* hearing, the court opined mother was "a delightful person" with "tremendous mental health issues." The court determined mother needed a guardian ad litem because she could not understand the nature of the proceedings and could not assist her attorney "without the help of a guardian ad litem."

---

[2] *In re Sara D.* (2001) 87 Cal.App.4th 661 (*Sara D.*).

[3] In an addendum report prepared for the six-month review hearing, the Agency recommended terminating reunification services and setting a .26 hearing. The addendum report described a November 2011 visit where mother appeared to be delusional. Mother told the Agency in early January 2012 she did not want supervised visitation with daughter.

At a March 2012 hearing, the court appointed a guardian ad litem for mother and set a date for the combined six- and twelve-month review hearing.

*Combined Six- and Twelve-Month Review Hearing*

In its May 2012 report, the Agency recommended terminating reunification services and setting a .26 hearing. The Agency explained mother: (1) had not completed her case plan, (2) was unwilling to participate in supervised visitation, (3) continued "to deny her mental health issues," (4) refused "to participate in psychiatric care," and (5) denied "she needs medication." The Agency noted mother had been arrested in January 2012 for misdemeanor violation of a protective order and again in February 2012 for, among other things, felony burglary.

Mother declined to attend the combined six- and twelve-month review hearing and her appearance was waived by her attorney and guardian ad litem. Following the hearing, the court terminated reunification services and set a .26 hearing. The court determined mother had made no progress toward alleviating or mitigating the causes necessitating daughter's placement.

*The .26 Hearing*

In its .26 hearing report and in various addendum reports, the Agency recommended terminating parental rights and selecting adoption as the permanent plan for daughter. Mother testified at the .26 hearing. She described her visits with daughter and opposed the termination of her parental rights. Following the hearing, the court concluded daughter was adoptable and the beneficial parent-child relationship exception did not apply. The court terminated parental rights.

DISCUSSION

Mother's sole claim on appeal concerns the court's purported delay in appointing a guardian ad litem for her. According to mother, the court should have appointed a guardian ad litem "from the very beginning of these proceedings."

" 'In a dependency case, a parent who is mentally incompetent must appear through a guardian ad litem, to whom the parent yields management and control of the

5

litigation. [Citations.] Before appointing a guardian ad litem for a parent in a dependency proceeding, however, the juvenile court must hold an informal hearing at which the purpose and powers of a guardian ad litem and the reasons for believing the parent incompetent are explained to the parent and, if the parent does not consent to the guardian ad litem's appointment, the parent is given an opportunity to argue that a guardian ad litem is not required. [Citation.]' " (*In re M.P.* (2013) 217 Cal.App.4th 441, 452 (*M.P.*), quoting *In re James F.* (2008) 42 Cal.4th 901, 904 (*James F.*).)

" 'The test [of mental competence] is whether the parent has the capacity to understand the nature or consequences of the proceeding and to assist counsel in preparing the case. [Citations.]' [Citation.] A person may be found incompetent if the person was either incapable of understanding the nature and purpose of the proceeding or unable to assist counsel in a rational manner. [Citation.] . . . [¶] [T]he primary concern in section 300 cases is whether the parent understands the proceedings and can assist the attorney in protecting the parent's interests in the companionship, custody, control and maintenance of the child.' [Citation.] 'In a dependency proceeding, a juvenile court should appoint a guardian ad litem for a parent if the requirements of either Probate Code section 1801 or Penal Code section 1367 are satisfied. [Citation.]'[4] '[T]he trial court must find by a preponderance of the evidence that the parent comes within the requirements of either section.' [Citation.]" (*M.P.*, *supra*, 217 Cal.App.4th at p. 453, italics omitted.)

"[E]rror in the procedure used to appoint a guardian ad litem for a parent in a dependency proceeding is trial error that is amenable to harmless error analysis rather

_____

[4] Penal Code section 1367, subdivision (a) provides in pertinent part: "A defendant is mentally incompetent . . . if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the . . . proceedings or to assist counsel in the conduct of a defense in a rational manner." Pursuant to Probate Code section 1801, a conservator may be "appointed for a person who is unable to provide properly for his or her personal needs for physical health, food, clothing, or shelter" or "who is substantially unable to manage his or her own financial resources or resist fraud or undue influence." (Prob. Code, § 1801, subds. (a) & (b).)

6

than a structural defect requiring reversal of the juvenile court's orders without regard to prejudice." (*James F.*, *supra*, 42 Cal.4th at p. 915.) We reject mother's claim that the purported delay in appointing mother a guardian ad litem "rises to the level of structural error." As mother concedes, courts have considered — and rejected — this argument and have applied a harmless error standard to review challenges like the one mother makes here. (*James F.*, *supra*, 42 Cal.4th at p. 915; *In re Esmeralda S.* (2008) 165 Cal.App.4th 84, 96 (*Esmeralda S.*).) Under the harmless error standard, "[w]e do not set aside the judgment unless a different result would have been probable had the error not occurred. [Citation.]" (*In re A.C.* (2008) 166 Cal.App.4th 146, 157 (*A.C.*).)

We will assume for the sake of argument the court erred by failing to appoint a guardian ad litem earlier in the proceedings. We conclude any delay was harmless because mother has not — and cannot — demonstrate a different result would have been probable had the court appointed a guardian ad litem earlier. *A.C.*, *supra*, 166 Cal.App.4th at page 159, is instructive. There, the juvenile court terminated the father's parental rights and he appealed, claiming the court erred by failing to appoint a guardian ad litem. (*Id.* at p. 148.) Specifically, the father argued a guardian ad litem "would have made a difference in the outcome by challenging (1) the dependency court's jurisdiction, (2) [the minor's] placement out of [his] care, (3) the recommendation against reunification services for [him], and (4) the lack of visitation between" the father and the minor. (*Id.* at p. 159.) The *A.C.* court disagreed and concluded, "[w]e do not think a GAL would have changed that outcome." (*Ibid.*) As the court explained, the father was "gravely disabled due to mental illness" and was "unable to provide for his basic personal needs for food, clothing, or shelter." (*Ibid.*)

As in *A.C.,* mother cannot show she was prejudiced by the court's failure to appoint a guardian ad litem earlier in the case. Mother was unable to provide for her own needs and "there is no doubt that [she] could not care for [her] daughter." (*A.C.*, *supra,* 166 Cal.App.4th at p. 159.) It is simply not probable the court would have declined to terminate mother's parental rights had the court appointed a guardian ad litem at the start of the proceedings. Mother received 12 months of reunification services, but she failed to

7

take advantage of many of the services due to her mental illness. (See *In re Enrique G.* (2006) 140 Cal.App.4th 676, 686–687 (*Enrique G.*) [appointment of guardian ad litem harmless where mother did not participate in services offered by the Agency, did not visit the minor, and did not remain in contact with the Agency].)

Mother claims a guardian ad litem, appointed at the outset of the proceedings, would have: (1) reduced "significant delays" in the commencement of reunification services and visitation; (2) requested a "revised case plan" with "sufficient mental health services"; and (3) facilitated communication between "all relevant parties." We are not persuaded. Mother has not explained how any of these actions would have made a difference in the outcome of this case. Mother had the opportunity to visit daughter but seldom took advantage of that opportunity; she informed the Agency she did not want to visit daughter in a supervised setting. In addition, mother denied having mental health issues and refused to receive treatment or take medication. Mother's claim that the guardian ad litem would have facilitated communication between mother and other "relevant parties" only invites speculation about the likelihood of a more favorable outcome. There is no evidence procedural deficiencies occurred due to the absence of a guardian ad litem, nor that any such deficiencies played a role in the court's decision to terminate parental rights. "[A] finding that the juvenile court's error was prejudicial must be based on a claim of prejudice rather than speculation of possible prejudice — because it is simply inefficient to reverse a dependency judgment based upon speculation that an offending parent may have handled the case differently than his or her guardian ad litem." (*Esmeralda S.*, *supra*, 165 Cal.App.4th at p. 96 [error in appointment of guardian ad litem was harmless].)

Mother's claim that "guardianship was a potential and feasible option" does not alter our conclusion. Mother does not explain what action the guardian ad litem could have taken regarding guardianship and she ignores the statutory preference for adoption as the permanent plan. "Because a parent's claim to . . . an exception [to termination of parental rights] is evaluated in light of the Legislature's preference for adoption, it is only in exceptional circumstances that a court will choose a permanent plan other than

8

adoption. [Citation.]" (*In re Scott B.* (2010) 188 Cal.App.4th 452, 459.) Mother has not identified any such exceptional circumstances.

Mother's reliance on *In re M.F.* (2008) 161 Cal.App.4th 673 (*M.F.*), is misplaced. In that case, the mother was 14 when the dependency proceedings began. She waived her right to a contested jurisdictional hearing, and her attorney appeared without her at the dispositional and six-month review hearings and offered no evidence or argument. (*Id.* at pp. 678, 681.) The dependency court failed to appoint a guardian ad litem for the mother until just before the .26 hearing and later terminated her parental rights. On appeal, the mother contended "the juvenile court erred by failing to appoint a guardian ad litem . . . earlier in the proceedings." (*Id.* at p. 678.) The appellate court agreed and reversed. It explained the mother's "rights were compromised at key hearings" because, among other things, the mother waived her right to a contested jurisdictional hearing and the petition did not allege any wrongful conduct by the mother. (*Id.* at p. 681.)

*M.F.* is distinguishable. Here, mother was not a minor when the dependency proceedings began and the dependency petition alleged wrongful conduct by mother. Moreover — and in contrast to *M.F.* — mother attended and testified at the combined jurisdictional and dispositional hearing. Unlike *M.F.,* the court appointed a guardian ad litem for mother *before* the six- and twelve-month review hearing. Mother's rights were not compromised by the court's failure to appoint a guardian ad litem at the outset of the case. "Under the circumstances of this case, it is clear that the outcome of the proceedings would have been the same even if the court had" appointed a guardian ad litem at the commencement of the dependency proceedings. (*Enrique G.*, *supra*, 140 Cal.App.4th at p. 687.)

## DISPOSITION

The order terminating mother's parental rights is affirmed.

9

_____
Jones, P.J.

We concur:


_____
Simons, J.


_____
Needham, J.