Filed 3/27/15  In re D.C. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re D.C., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY BUREAU OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.C.,<br><br>        Defendant and Appellant. | A141989<br><br>(Contra Costa County Super. Ct. No. J13-01002) |

D.T.C. (father), the father of one-year-old D.C., appeals from a juvenile court order terminating his parental rights.  Father argues that (1) the requirements of the Indian Child Welfare Act (ICWA) and related state laws were not satisfied; (2) the "statutory framework" of Welfare and Institutions Code section 300 et sequitur was not followed;[1] and (3) the court should have appointed a guardian ad litem for him.  He also claims his trial counsel rendered ineffective assistance of counsel.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

1

We recently decided an appeal involving D.C.'s older sister[2] in which father raised nearly identical issues, and much of the following discussion is drawn from our opinion in that case. (*In re D.C.* (Jan. 29, 2015, A141365) [nonpub. opn.].) As we did in sister's case, we conditionally reverse the order terminating father's parental rights and remand to ensure compliance with ICWA-related requirements, but we otherwise reject father's claims.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

D.C. was born in August 2013. Although father and R.C. (mother) behaved appropriately with him at the hospital, D.C. was removed from their care four days after he was born because of father's drug use and the parents' mental illness, history of domestic violence, and failure to comply with case plans in dependency cases involving other children of theirs, including sister and a set of paternal half-siblings.[3]

The Contra Costa County Children & Family Services Bureau (Bureau) filed a juvenile dependency petition alleging jurisdiction under section 300, subdivision (b) (failure to protect) based on the parents' domestic violence and drug use and under subdivision (j) (abuse of sibling) based on the parents' failure to participate in reunification services in the other dependency cases involving their children. Father appeared at the detention hearing and was declared the presumed father. Neither parent appeared at the contested jurisdictional hearing in November 2013, however, and the juvenile court found that the petition's allegations were true and that D.C. was a child described by section 300, subdivisions (b) and (j).

Despite an order for visits of twice a month between the parents and D.C., who was placed in the same foster home as sister, father visited only once, in early November

---

[2] Because D.C. and his sister have the same initials, we will refer to her as "sister" to avoid confusion.

[3] Father's appeal involving the half-siblings' dependency cases is currently pending in this court. (*In re L.C.* (A142376).)

2

2013. The December 2013 disposition report recommended that reunification services not be offered, that visitation be terminated, and that a selection-and-implementation hearing under section 366.26 (section 366.26 hearing) be set because the parents had made no progress toward reunifying with their other children. Neither parent appeared at the disposition hearing in January 2014, and the juvenile court found that further visitation would be detrimental, bypassed reunification services under section 361.5, subdivision (b)(10) based on the parents' failure to reunify with their other children, and scheduled a section 366.26 hearing. It also took judicial notice of the files in the cases involving sister, the paternal half-siblings, and a maternal half-sister.

Father did not appear at the section 366.26 hearing in May 2014, despite being personally served with notice of it. His trial counsel objected to the recommendations in the report prepared for the section 366.26 hearing but stated that he had "not had any contact from [father] in a number of months" and submitted. The juvenile court then terminated father's and mother's parental rights.

## II.
### DISCUSSION

A.     *The Order Terminating Father's Parental Rights Must Be Conditionally Reversed Because the Juvenile Court Did Not Determine Whether ICWA Applies.*

Father argues that the order terminating his parental rights must be conditionally reversed because the juvenile court and the Bureau failed to comply with ICWA-related notice and inquiry requirements. We conclude that a conditional reversal is necessary because, as in sister's case, the court never made an express or implied finding whether ICWA applies.

The petition filed in August 2013 included an ICWA-010(A) form, "Indian Child Inquiry Attachment," stating that an ICWA inquiry had been made of both parents and that D.C. had no known Indian ancestry. The detention/jurisdiction report similarly stated that the parents "reported that this child has no known Native American Heritage."

On August 28, however, father completed and filed an ICWA-020 form, "Parental Notification of Indian Status," in which he checked a box indicating that he "may have

3

Indian ancestry." He did not identify any specific tribes in the space provided.[4] The December 2013 disposition report states that father signed an ICWA-020 form on August 10, 2012, in which he "stated he does not have Indian Ancestry," an apparent reference to a form filed in the paternal half-siblings' cases.[5] This report also states that father "believes that he has American Indian Ancestry on his father's side" but that he had met his father only once and neither "he [nor anyone] in his family has any information about which relative and/or which tribe(s) [the ancestry] might have come from."

Despite father's indications that he might have Indian ancestry, the juvenile court never determined whether ICWA applied, made any ICWA-related findings or orders, or mentioned ICWA issues during the proceedings below. Nor is there any evidence that the Bureau conducted any further inquiry in response to the information father provided.

The purpose of ICWA is "to protect the best interests of Indian children and to promote the stability and security of Indian tribes." (25 U.S.C. § 1902.) "ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469.) To further these goals, tribes are entitled to take exclusive jurisdiction over or intervene in state dependency proceedings involving Indian children. (25 U.S.C. § 1911(a) & (c).) "Because [a] tribe's right to assert jurisdiction over . . . or to intervene in such proceedings would be meaningless if the tribe has no notice that the action is pending," ICWA requires notice " 'where the [juvenile] court knows or has reason to know that an Indian child is involved.' "

---

[4] Mother also completed and filed an ICWA-020 form in which she indicated she does not have any known Indian ancestry. Father does not rely on any potential Indian heritage of hers in making his claim.

[5] We deny as moot the Bureau's request that we take judicial notice of this document because the juvenile court already took judicial notice of the records from the paternal half-siblings' cases.

4

(25 U.S.C. § 1912(a); *In re B.R.* (2009) 176 Cal.App.4th 773, 780; see § 224.2; Cal. Rules of Court, rule 5.481(b).[6])

State law also imposes on both the juvenile court and the county welfare agency "an affirmative duty to inquire whether a dependent child is or may be an Indian child." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848; § 224.3, subd. (a); rule 5.481(a).) If the court or the agency "knows or has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child" to facilitate the provision of notice. (§ 224.3, subd. (c); see also *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1200.) An "Indian child" is any unmarried minor who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) Among the circumstances that "may provide reason to know that the child is an Indian child" is when a relative "provides information suggesting that the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1); see also rule 5.481(a)(5).)

We need not determine whether the juvenile court and the Bureau complied with ICWA-related notice and inquiry requirements because, as in sister's case, the court failed to determine in the first instance whether ICWA applies.[7] Although a juvenile court is not "required to make an *express* finding that ICWA [does] not apply[,] . . . the record must reflect that the court considered the issue" and has at least *implicitly* so found. (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506, italics added; *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1413.) The court here made no express finding about ICWA's applicability, and we are unable to conclude that it made an implied finding.

---

[6] All further rule references are to the California Rules of Court.

[7] Father first addressed this issue in his reply brief, which was filed after our opinion in sister's case. We gave the Bureau an opportunity to respond with any points not already raised in sister's case, and it chose not to do so.

There is no indication the court ever considered father's ICWA-020 form or father's expressed belief that he had Indian ancestry.

We are also unable to conclude the failure was harmless. (See *In re Antoinette S.*, *supra*, 104 Cal.App.4th at pp. 1413-1414 [finding such failure harmless where Bureau of Indian Affairs responded to notice by saying child had no known Indian heritage]; see also *In re Z.N.* (2009) 181 Cal.App.4th 282, 298, 301-302 [any ICWA error harmless where tribes responded to notice sent in half-siblings' cases by saying children not members or eligible for membership].) The ICWA-010(A) form filed in this case and the form filed in the paternal half-siblings' cases and the detention/jurisdiction report's indications that father had no known Indian ancestry directly conflicted with father's ICWA-020 form and father's later statements to the social worker about his possible Indian heritage. This conflict triggered the duty of both the Bureau and the juvenile court to inquire further. (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1167-1168.) Even assuming the Bureau thoroughly interviewed father, there is no indication it ever attempted to get information about his possible Indian background from any other source, such as relatives father identified to the social worker. (See *id.* at pp. 1165, 1167-1168; § 224.3, subd. (c); rule 5.481(a)(4).)

Perhaps father's representations of Indian heritage would not have held up in the face of his conflicting representations on the subject, but we cannot make any determinations about his credibility in the first instance. (See *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1329.) And it may be that further inquiry would have been futile, if contact could not be made with father's relatives or if father is correct that no one knows anything further about his potential Indian heritage. But these doubts—unlike the conclusive responses from the BIA and tribes in *In re Z.N.*, *supra*, 181 Cal.App.4th 282 and *In re Antoinette S.*, *supra*, 104 Cal.App.4th 1401—do not foreclose the possibility that D.C. might be an Indian child. As a result, we must conditionally reverse the order terminating father's parental rights and remand for the limited purpose of compliance with ICWA-related requirements. (*In re Gabriel G., supra*, 206 Cal.App.4th at p. 1168.)

6

B.    *Father Forfeited His "Statutory Framework" Claims By Failing to File a Petition for Extraordinary Writ Review of the January 2014 Order.*

Father argues that the juvenile court "committed revers[i]ble error when it failed throughout the dependency matter to adhere to the statutory framework provided in section 300 et seq." (Capitalization omitted.) Specifically, he claims the court erred by bypassing reunification services, not notifying him of the limited time period for reunification, not ensuring he was provided a case plan, and not considering D.C.'s potential placement with relatives. Conceding that he forfeited these claims by not filing a petition for extraordinary writ review of the January 2014 order bypassing reunification services and setting a section 366.26 hearing unless his failure to file a writ petition was justified, he argues that the court did not provide proper notice of the writ requirement and that his trial counsel provided ineffective assistance. Since we conclude that father did receive proper notice and cannot establish his failure to file a writ petition resulted from ineffective assistance of counsel, we reject his "statutory framework" claims.[8]

An order setting a section 366.26 hearing and "any [other] order, regardless of its nature, made at the hearing at which a setting order is entered" must be challenged by filing a petition for extraordinary writ review. (*In re Anthony B.* (1999) 72 Cal.App.4th 1017, 1021, 1023-1024; § 366.26, subd. (*l*); see rules 8.450, 8.452.) Generally, a party cannot challenge such orders in an appeal unless the party timely filed a petition for writ review and "[t]he petition . . . was summarily denied or otherwise not decided on the merits." (§ 366.26, subd. (*l*)(1)(A), (C), (*l*)(2).)

The failure to file a writ petition may be excused for "good cause," however, such as where the juvenile court fails to inform the party of the need to file such a petition to challenge the order setting the section 366.26 hearing. (*In re Cathina W.* (1998) 68 Cal.App.4th 716, 722-723.) After entering such an order, the court is required to "advise all parties of the requirement of filing a petition for extraordinary writ review . . .

---

[8] Father also argues that his trial counsel rendered ineffective assistance by failing to raise objections related to these claims. We need not consider this issue because we determine that the claims are foreclosed by father's failure to file a writ petition, not by his failure to object below.

7

in order to preserve any right to appeal these issues." (§ 366.26, subd. (*l*)(3)(A).) If a party is not in court when the order is made, notice must be made "by first-class mail by the clerk of the court to the last known address" of that party. (§ 366.26, subd. (*l*)(3)(A); see also rule 5.590(b).)

At the outset of this case, father filed a JV-140 form, "Notification of Mailing Address," identifying a permanent mailing address on "Golden Gate Ave" in San Francisco. In December 2013, the social worker reported that father had indicated this address "remain[ed] good." Father did not appear the next month when the juvenile court set the section 366.26 hearing, and a superior court clerk mailed notice of the writ requirement to him at an address identical to that designated on his JV-140 form, except for saying "Golden Gate Street" instead of Golden Gate Avenue.

Father argues that the juvenile court did not provide proper notice because the notice was sent to Golden Gate Street instead of Golden Gate Avenue. He never claims that he actually failed to receive the notice, however, and there is no evidence that it was returned to the sender. Indeed, in his reply brief, father states that he "does not have a declaration to submit addressing whether [he] received the notice." Nor does he claim he was unaware of the writ requirement, and he did not attempt to appeal from the January 2014 order.

As we explained in more detail in sister's case, under *In re T.W.* (2011) 197 Cal.App.4th 723, 730, such facts permit the inference that father did receive the mailed notice. Father attempts to distinguish *T.W.* on the basis that it involved a missing zip code. (*Id.* at p. 729.) He argues that the current situation is more akin to *In re Alice M.*, *supra*, 161 Cal.App.4th at p. 1201, in which an ICWA notice sent to " 'Route 1, Box 121' " in Apache, Oklahoma with no zip code instead of " 'Route 2, Box 121' " in the same city with a zip code was deemed insufficient. We disagree. Using a "street" instead of an "avenue" designation is not akin to naming the wrong street entirely. Father concedes that there is no "Golden Gate Street" in San Francisco, much less in the same zip code, and there is no other reason to think that he did not receive the notice. As a result, he has not established good cause for his failure to file a writ petition.

8

Father's claim that his trial counsel rendered ineffective assistance by not filing a writ petition also fails. Although ineffective-assistance claims are normally raised by a petition for writ of habeas corpus because they depend on evidence outside the record, such a claim "may be reviewed on direct appeal when there is no satisfactory explanation for trial counsel's act or failure to act." (*In re N.M.* (2008) 161 Cal.App.4th 253, 270; *In re Arturo A.* (1992) 8 Cal.App.4th 229, 243.) But, just as we concluded in sister's case, the obvious possible explanation for why father's trial counsel did not file a writ petition is that he did not have the required authorization from father to do so. (*Arturo A.*, at p. 243; *In re Cathina W.*, *supra*, 68 Cal.App.4th at p. 724; see also rule 8.450(e)(3).) Again, "[w]e cannot assume that the decision [not to file a writ petition] was the result of negligence, when it could well have been based upon some practical or tactical decision governed by client guidance." (*Arturo A.*, at p. 243.)

In sum, father cannot establish that he failed to receive proper notice of the writ requirement or that his trial counsel provided ineffective assistance by not filing a writ petition. Therefore, as he concedes, his "statutory framework" claims fail, because he did not seek appellate review of the January 2014 order. (See *In re Janee J.* (1999) 74 Cal.App.4th 198, 207-209; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150-1151 [discussing waiver rule preventing challenges to previous orders of which timely appellate review not sought].)

> ### C. *Father Cannot Prevail on His Claim that He Was Improperly Denied a Guardian Ad Litem.*

Finally, father contends the juvenile court erred by not sua sponte appointing a guardian ad litem for him due to his mental incompetency.[9] He also argues that his trial counsel's failure to raise the issue of competency constituted ineffective assistance of counsel. Both claims fail because, as in sister's case, the record fails to disclose any

---

[9] For the same reasons we gave in sister's case, father's failure to file a writ petition does not foreclose this claim. (See *In re A.C.* (2008) 166 Cal.App.4th 146, 156-157; *In re M.F.* (2008) 161 Cal.App.4th 673, 681-682.)

9

evidence that father was unable to understand or participate in the proceedings or to assist his trial counsel.

The detention/jurisdiction report stated that father's psychiatric records from when he was a dependent child showed that he "ha[d] been described as 'predatory and ha[d] a history of molesting others,' " " '[did] not possess the self-awareness or self-control skills to live safely and independently in the community,' " and " 'continue[d] to display aggressive and sexually predatory behaviors and [would] require continued conservatorship beyond his [eighteenth] birthday to ensure proper treatment as well as protection for the community.' " The disposition report clarified that during his dependency, father "was diagnosed with PTSD, Depressive Disorder, and Oppositional Defiant Disorder," "placed in high level residential treatment programs," and had a mental health conservator from the time he was 14 years old to the time he emancipated, and that a continued conservatorship was not pursued because he had run away to the East Coast at the time of emancipation. The report also stated that father reported "he has never worked . . . [and] has always received disability due to mental illnesses (PTSD, deep depression, Bi-Polar Disorder) and/or his life threatening illness."

"Code of Civil Procedure section 372 provides that in any proceeding in which an incompetent person is a party, that person shall appear by a guardian ad litem appointed by the court in which the action is pending." (*In re Sara D.* (2001) 87 Cal.App.4th 661, 665; Code of Civ. Proc., § 372, subd. (a).) A person may be found incompetent under either Penal Code section 1367, which applies to criminal defendants, or Probate Code section 1801, which applies to conservatees. In the dependency context, the key question in determining whether an adult parent requires a guardian ad litem is "whether the parent has the capacity to understand the nature or consequences of the proceeding and to assist counsel in preparing the case." (*In re James F.* (2008) 42 Cal.4th 901, 910; *Sara D.*, at p. 667.)

"When a dependency court has knowledge of a party's . . . incompetence under [Code of Civil Procedure] section 372, the dependency court has an obligation to appoint a [guardian ad litem] sua sponte." (*In re A.C.*, *supra*, 166 Cal.App.4th at p. 155.) We

review the failure to appoint a guardian ad litem for an abuse of discretion. (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1366-1367; see also *In re Christopher I.* (2003) 106 Cal.App.4th 533, 568.)

The relevant information before the juvenile court here was similar to that before the juvenile court in sister's case, and we again conclude that the court's sua sponte duty to appoint a guardian ad litem was not triggered. Information about father's mental health issues and his earlier conservatorship did not require appointment of a guardian ad litem absent an indication that father was unable to understand the proceedings or assist his trial counsel. (*In re Ronell A.*, *supra*, 44 Cal.App.4th at pp. 1367-1368; *In re R.S.* (1985) 167 Cal.App.3d 946, 979.) Father appeared at only one hearing below, during which he apparently acted normally and responded appropriately when questioned by the court. Finally, his trial counsel did not raise any concerns about his competency. As the record lacks any evidence that father was unable to participate in or understand the proceedings, we conclude the court did not abuse its discretion by not sua sponte appointing a guardian ad litem for him.

Father's claim of ineffective assistance of counsel similarly fails. As mentioned above, such claims "may be reviewed on direct appeal when there is no satisfactory explanation for trial counsel's act or failure to act." (*In re N.M.*, *supra*, 161 Cal.App.4th at p. 270.) Here, given the lack of evidence that father was unable to participate in or understand the proceedings, counsel may have reasonably believed that father was competent, and father therefore cannot establish he received ineffective assistance based on counsel's failure to raise the issue of his competence.

## III.
### DISPOSITION

The order terminating father's parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions to ensure a further inquiry into father's Indian heritage and, if necessary, compliance with ICWA notice requirements. The court shall then determine whether ICWA applies. If the court determines that ICWA does not apply, it shall reinstate the order terminating father's parental rights. If

11

the court determines that ICWA does apply, it shall proceed in compliance with ICWA and related state requirements.  In all other respects, the order terminating father's parental rights is affirmed.

_____
Humes, P.J.

We concur:


_____
Margulies, J.


_____
Banke, J.

12